Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Richard J. (Rex) Burch*
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

Michael A. Josephson*
Texas State Bar No. 24014780
Andrew W. Dunlap*
Texas State Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

* To apply for admission *pro hac vice*.

*Attorneys for Plaintiff and Potential Opt-in Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| WILL TOOMEY, Individually and On Behalf of Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COLD BORE TECHNOLOGY CORP.,<br><br>Defendant. | **Case No. _____**<br><br>**PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**<br><br>1)  Violation of the Fair Labor Standards Act—Failure to Pay All Overtime Wages<br><br>2)  Violation of the New Mexico Minimum Wage Act—Failure to Pay All Overtime Wages |

# ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1.     Will Toomey ("Toomey") brings this class and collective action lawsuit to recover unpaid overtime wages and other damages from Cold Bore Technology Corp. ("Cold Bore") under the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA").

2.     Cold Bore employed Toomey as one of its Day Rate Workers (defined below).

3.     Cold Bore paid Toomey and its other Day Rate Workers by the day.

4.     Toomey and the other Day Rate Workers regularly work more than 40 hours a workweek.

5.     But Cold Bore does not pay Toomey and its other Day Rate Workers overtime.

6.     Instead, Cold Bore misclassifies Toomey and the other Day Rate Workers as independent contractors and pays them a flat amount for each day worked, regardless of the total number of hours they work in a workday or in a workweek (a "day rate").

7.     Cold Bore pays Toomey and the other Day Rate Workers under its uniform day rate pay scheme regardless of individualized factors.

8.     Cold Bore's uniform day rate pay scheme violates the FLSA and NMMWA by depriving Toomey and the other Day Rate Workers of overtime wages for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

9.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10.     This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11.     This Court has general personal jurisdiction over Cold Bore because Cold Bore is incorporated in Nevada.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) in this District because Cold Bore resides in this District.

**PARTIES**

13.     Toomey worked for Cold Bore as a Data Analyst in New Mexico, Texas, and Louisiana from approximately May 2021 until November 2023.

14.     Throughout his employment, Cold Bore misclassified Toomey as an independent contractor to avoid paying him overtime wages.

15.     Instead, Cold Bore paid Toomey according to its illegal day rate pay scheme.

16.     Toomey's written consent is attached as **Exhibit 1**.

17.     Toomey brings this class and collective action on behalf of himself and other similarly situated Data Analysts who worked for, or on behalf of, Cold Bore.

18.     Cold Bore likewise misclassified these Data Analysts as independent contractors to avoid paying them overtime wages.

19.     Cold Bore paid each of these Data Analysts under its illegal day rate pay scheme, in willful violation of the FLSA.

20.     The collective of similarly situated employees is defined as:

> **All Data Analysts[1] who worked for, or on behalf of, Cold Bore who were paid day rate and no overtime at any time during the past 3 years (the "FLSA Collective Members").**

21.     Toomey also seeks to represent a class under the NMMWA pursuant to FED. R. CIV. P. 23.

---

[1] Data Analysts are also referred to as "Field Technicians" or similar job titles.

22.     The New Mexico Class of similarly situated employees is defined as:

**All Data Analysts who were paid day rate and no overtime, while working for or on behalf of Cold Bore in New Mexico (the "New Mexico Class Members").**

23.     The FLSA Collective Members and the New Mexico Class Members are collectively referred to as the "Day Rate Workers."

24.     Cold Bore is a Nevada corporation.

25.     Cold Bore can be served through its registered agent: **GKL Registered Agents of NV, Inc., 3064 Silver Sage Dr., Ste. 150, Carson City, NV 89701**.

### FLSA COVERAGE

26.     At all relevant times, Cold Bore was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27.     At all relevant times, Cold Bore was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

28.     At all relevant times, Cold Bore was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, pens, pencils, etc. – that have been moved in or produced for commerce.

29.     At all relevant times, Cold Bore has had an annual gross volume of sales made or business done of at least $1,000,000 each year.

30.     At all relevant times, the Day Rate Workers were Cold Bore's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

31.     Cold Bore treated Toomey and the other Day Rate Workers as employees and uniformly dictated the pay and other employment practices it applied to them.

32.     Cold Bore's misclassification of Toomey and the other Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA.

33.     At all relevant times, Toomey and the other Day Rate Workers were engaged in commerce or in the production of goods for commerce.

34.     Cold Bore uniformly paid Toomey and the other Day Rate Workers under its illegal day rate pay scheme.

35.     Cold Bore applied its illegal day rate pay scheme to Toomey and the other Day Rate Workers regardless of any alleged individualized factors, such as specific job title or geographic location.

36.     By paying Toomey and the other Day Rate Workers under its illegal day rate pay scheme, Cold Bore did not pay them overtime wages when they worked more than 40 hours a workweek.

37.     Cold Bore's uniform day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

38.     Cold Bore holds itself out as "the new foundational standard in Frac Enterprise Communication" and "the only company in North America providing a standard protocol-enabled base layer (LayerZERO) for frac, which not only services operators but service companies as well."[2]

39.     To carry out its business objectives, Cold Bore hires Data Analysts, like Toomey and the other Day Rate Workers, to travel to Cold Bore's clients' wellsites, as assigned by Cold Bore, to set up and utilize Cold Bore's proprietary equipment and systems to collect data on the wellsite frac process, as well as troubleshoot issues that arise in implementing Cold Bore's systems.

40.     Cold Bore misclassifies its Data Analysts, like Toomey and the Day Rate Workers, as independent contractors to avoid paying them overtime compensation.

---

[2] https://www.coldboretechnology.com/ (last visited July 22, 2024).

-4-
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Toomey v. Cold Bore Technology Corp.*

41.     But Cold Bore does not hire Toomey and the other Day Rate Workers on a project-by-project basis.

42.     Cold Bore hires Toomey and the other Day Rate Workers for an indefinite duration.

43.     Cold Bore hires and treats Toomey and the other Day Rate Workers just like regular employees.

44.     Despite misclassifying Toomey and the other Day Rate Workers as independent contractors, Cold Bore controls all meaningful aspects of their employment.

45.     Cold Bore controls Toomey's and the other Day Rate Workers' rate and method of pay.

46.     Cold Bore controls the Day Rate Workers' rate and method of pay and dictates their rate and method of pay to them on a take it or leave it basis.

47.     Cold Bore controls Toomey's and the other Day Rate Workers' schedules and assignments.

48.     Cold Bore tells Toomey and the other Day Rate Workers the locations they are required to work at and dates they are required to work at those locations.

49.     In other words, Cold Bore tells Toomey and the other Day Date Workers where to go and when to be there, to complete the job Cold Bore assigns them to complete.

50.     Cold Bore controls Toomey's and the other Day Rate Workers' work duties.

51.     Cold Bore requires Toomey and the other Day Rate Workers to follow Cold Bore's policies, procedures, protocols, and specifications.

52.     Toomey's and the other Day Rate Workers' work must strictly adhere to the quality standards put in place by Cold Bore.

53.     In fact, while on the jobsite, Toomey and the other Day Rate Workers take direction from and are supervised by Cold Bore personnel.

54. Indeed, the daily and weekly activities of Toomey and the other Day Rate Workers are routine and largely governed by standardized plans, procedures, and guides created by Cold Bore.

55. Virtually every job function is predetermined by Cold Bore, including the Cold Bore proprietary equipment used at the job site, the data to compile, the schedule of work, and related work duties.

56. In fact, upon hiring, Cold Bore requires all Data Analysts working on its (and its clients') jobsites, including Toomey and the other Day Rate Workers, to complete a training hitch of approximately 6 weeks to learn how to utilize and implement Cold Bore's proprietary equipment and software.

57. Likewise, as part of this training hitch, Cold Bore requires all Data Analysts working on its (and its clients') jobsites, including Toomey and the other Day Rate Workers, to learn its policies and procedures to ensure their work conforms to the same.

58. Cold Bore requires Toomey and the other Day Rate Workers to complete quizzes and tests as part of this approximately 6+ weeks of training.

59. Without the job Toomey and the other Day Rate Workers perform, Cold Bore would not be able to complete its business objective of providing data recording and analysis services of frac wellsites to its clients.

60. Thus, the work Toomey and the other Day Rate Workers perform is an essential and integral part of Cold Bore's core frac wellsite data recording and analysis business.

61. Toomey and the other Day Rate Workers rely on Cold Bore for work and compensation.

62. But Toomey and the other Day Rate Workers do not share in Cold Bore's financial success.

63. Indeed, Toomey and the other Day Rate Workers have little or no opportunity to experience a profit or loss related to their employment.

64.     Rather, Toomey's and the other Day Rate Workers' income is limited to the flat daily amount Cold Bore pays them for days that they actually work.

65.     Toomey and the other Day Rate Workers cannot subcontract out the work they are assigned by Cold Bore.

66.     Toomey and the other Day Rate Workers do not substantially invest in the tools and equipment required to complete the overall job Cold Bore assigns them.

67.     Rather, Cold Bore incurs the large-scale business and operating expenses like payroll, marketing, and proprietary software and equipment.

68.     Toomey and the other Day Rate Workers do not market their services while employed by Cold Bore.

69.     Nor do Toomey and the other Day Rate Workers do not utilize any unique or specialized skillset to market their services, while employed by Cold Bore.

70.     Cold Bore sets Toomey's and the other Day Rate Workers' work schedule, which prevents them from working other jobs while working for Cold Bore.

71.     Indeed, Cold Bore requires Toomey and the other Day Rate Workers to live at or near their assigned job sites during their hitches.

72.     At all relevant times, Cold Bore maintained control, oversight, and direction of Toomey and the other Day Rate Workers, including, but not limited to, hiring, firing, disciplining, and other employment practices.

73.     In sum, as a matter of economic reality and under New Mexico law, Toomey and the other Day Rate Workers are Cold Bore's employees. *See* N.M.S.A. § 51-1-42(F)(5).

74.     Cold Bore uniformly pays its Data Analysts, including Toomey and the other Day Rate Workers, under its illegal day rate pay scheme.

75.     Cold Bore routinely requires Toomey and the other Day Rate Workers to work more than 40 hours a workweek.

76.     Instead of paying Toomey and the other Day Rate Workers overtime wages, Cold Bore only pays them their flat day rates for their actual days worked.

77.     While exact job titles, job duties, and locations may differ, these employees are subjected to the same or similar illegal pay practice—Cold Bore's illegal day rate pay scheme—for similar work.

78.     For example, Toomey worked for Cold Bore as a Data Analyst in New Mexico, Texas, and Louisiana from approximately May 2022 until November 2023.

79.     As a Cold Bore Data Analyst, Toomey's primary duties included, travelling to Cold Bore's clients' wellsites, as assigned by Cold Bore, to set up and utilize Cold Bore's proprietary equipment and systems to collect and analyze data on the wellsite frac process, as well as troubleshoot issues that arose in implementing Cold Bore's systems.

80.     Throughout his employment, Toomey typically worked at least 13 hours a day for 7 days a week (91 hours a workweek) for 6-week or longer hitches.

81.     Toomey worked in accordance with the assignments set by Cold Bore.

82.     Toomey worked in accordance with the schedule set by Cold Bore.

83.     Despite knowing Toomey regularly worked overtime, Cold Bore did not pay him overtime wages.

84.     Instead, Cold Bore paid Toomey under its illegal day rate pay scheme.

85.     Specifically, Cold Bore paid Toomey approximately $350 each day he actually worked, regardless of the number of hours he worked that day (or that workweek) and failed to pay him overtime when he worked over 40 hours a workweek.

86.     Cold Bore pays its other Day Rate Workers according to the same illegal day rate pay scheme it imposed on Toomey.

87.    That is, just as with Toomey, Cold Bore pays its other Day Rate Workers a flat sum for each day they actually work and fails to pay them overtime when they work more than 40 hours a workweek.

88.    Like Toomey, the other Day Rate Workers typically work at least 13 hours a day for 7 days a week (91 hours a week) for 6-week or longer hitches.

89.    And like Toomey, the other Day Rate Workers work in accordance with the assignments and schedule set by Cold Bore.

90.    Despite knowing its Day Rate Workers regularly work overtime, Cold Bore does not pay them overtime wages.

91.    Instead, Cold Bore pays its Day Rate Workers a flat amount for each day actually worked, regardless of the number of hours they work that day (or that workweek) and fails to pay them overtime when they work more than 40 hours a workweek, in willful violation of the FLSA and NMMWA.

92.    Cold Bore never paid Toomey and the other Day Rate Workers on an hourly basis.

93.    Cold Bore never paid Toomey and the other Day Rate Workers on a "salary basis."

94.    Cold Bore does not pay Toomey and the other Day Rate Workers a guaranteed salary that is not subject to reduction based on the quality or quantity worked.

95.    If Toomey and the other Day Rate Workers do not work, they do not get paid.

96.    Cold Bore only pays Toomey and the other Day Rate Workers their set day rates for the actual days they work.

97.    Toomey's and the other Day Rate Workers' day rates do not increase when they work more than 40 hours in a workweek.

98.    Thus, Cold Bore never paid Toomey and the other Day Rate Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 49-50 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Toomey v. Cold Bore Technology Corp.*

99.     Because Cold Bore fails to pay Toomey and the other Day Rate Workers on a "salary basis," they are all non-exempt employees entitled to overtime wages.

100.    But Cold Bore does not pay Toomey and the other Day Rate Workers overtime wages when they work more than 40 hours in a workweek, in willful violation of the FLSA and NMMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

101.    Toomey incorporates all other paragraphs by reference.

102.    Like Toomey, the other Day Rate Workers are victimized by Cold Bore's illegal day rate pay scheme.

103.    Other Day Rate Workers worked with Toomey and indicated they were paid in the same manner, performed similar work, and were subject to Cold Bore's same illegal day rate pay scheme.

104.    Based on his experience with Cold Bore, Toomey is aware Cold Bore's illegal day rate pay scheme was imposed on the other Day Rate Workers.

105.    The putative class of Day Rate Workers is so numerous that joinder of all of them in one lawsuit is impracticable

106.    The Day Rate Workers are similarly situated in the most relevant respects.

107.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

108.    Any relevant exemption defenses would require Cold Bore to pay the Day Rate Workers on a "salary basis."

109.    Because Cold Bore fails the "salary basis" test with respect to the Day Rate Workers, the specific job duties performed by them are largely irrelevant.

110.    The only *relevant* inquiry is whether the Day Rate Workers were paid a day rate with no overtime wages when they worked more than 40 hours in a workweek (which they were).

111. Therefore, the specific job titles or precise job locations of the various Day Rate Workers do not prevent class or collective treatment.

112. Rather, Cold Bore's uniform day rate pay scheme renders Toomey and the other Day Rate Workers similarly situated for the purposes of determining their right to overtime pay.

113. Cold Bore's records reflect the number of days the Day Rate Workers worked each week.

114. Cold Bore's records also show it paid the Day Rate Workers a day rate with no overtime compensation when they worked more than 40 hours in a workweek.

115. The back wages owed to Toomey and the other Day Rate Workers can therefore be calculated using the same formula applied to the same records.

116. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Cold Bore's records, and there is no detraction from the common nucleus of liability facts.

117. Therefore, the issue of damages does not preclude class or collective treatment.

118. Toomey's experiences are therefore typical of the experiences of the other Day Rate Workers.

119. Toomey has no interest contrary to, or in conflict with, the other Day Rate Workers that would prevent class or collective treatment.

120. Like each Day Rate Worker, Toomey has an interest in obtaining the unpaid wages owed under federal law.

121. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit.

122. Absent this class and collective action, many Day Rate Workers will not obtain redress for their injuries, and Cold Bore will reap the unjust benefits of violating the FLSA and NMMWA.

123. Further, even if some of the Day Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

124. Indeed, the multiplicity of actions would create a hardship to the Day Rate Workers, the Court, and Cold Bore.

125. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Workers' claims.

126. Toomey and his counsel will fairly and adequately represent the Day Rate Workers and their interests.

127. Indeed, Toomey has retained counsel with extensive experience in complex class and collective action litigation.

128. The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

129. Among the common questions of law and fact are:

    a.   Whether Cold Bore's day rate pay scheme deprived the Day Rate Workers of overtime when they worked more than 40 hours in a workweek in violation of the FLSA and NMMWA;

    b.   Whether Cold Bore's decision to misclassify its Day Rate Workers as exempt was made in good faith;

    c.   Whether Cold Bore's decision not to pay its Day Rate Workers overtime was made in good faith;

    d.   Whether Cold Bore's violations of the NMMWA result from a continuing course of conduct; and

    e.   Whether Cold Bore's FLSA violations were willful.

130.    Toomey knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

131.    As part of its regular business practices, Cold Bore intentionally, willfully, and repeatedly violated the FLSA with respect to the Day Rate Workers.

132.    Cold Bore's illegal day rate pay scheme deprived Toomey and the other Day Rate Workers of the overtime wages they are owed under federal law.

133.    There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

134.    The Day Rate Workers are known to Cold Bore and can be readily identified and located through Cold Bore's business and personnel records.

**COLD BORE'S VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA**

135.    Toomey incorporates all other paragraphs by reference.

136.    Cold Bore knew it controlled Toomey's and the other Day Rate Workers' rates of pay.

137.    Cold Bore knew it controlled Toomey's and the other Day Rate Workers' method of pay.

138.    Cold Bore knew it controlled Toomey's and the other Day Rate Workers' schedules.

139.    Cold Bore knew it prohibited Toomey and the other Day Rate Workers from straying from Cold Bore's procedures and other protocols in performing their job duties.

140.    Cold Bore knew it did not require Toomey and the other Day Rate Workers to possess any specialized skillset other than that maintained by all workers in their respective job positions.

141.    Cold Bore knew Toomey's and the other Day Rate Workers' work was integral to Cold Bore's core frac wellsite data collection and analysis business operations.

142.     Cold Bore knew its investment in the tools and equipment necessary for Toomey and the other Day Rate Workers to perform their jobs relatively outweighed any investment made by these employees.

143.     Cold Bore knew it did not hire Toomey and the other Day Rate Workers to work on a project-by-project basis.

144.     Cold Bore knew Toomey and the other Day Rate Workers relied on it for work and compensation.

145.     Cold Bore knew it limited Toomey's and the other Day Rate Workers' opportunity for "profit or loss" to their day rate compensation.

146.     Thus, Cold Bore knew, should have known, or recklessly disregarded whether, as a matter of economic reality, Toomey and the other Day Rate Workers were Cold Bore's employees.

147.     Nonetheless, Cold Bore misclassified Toomey and the other Day Rate Workers as independent contractors and refused to pay them overtime.

148.     Cold Bore's decision to misclassify Toomey and the other Day Rate Workers as independent contractors was neither reasonable, nor was it made in good faith.

149.     Cold Bore knew it was subject to the FLSA's overtime provisions.

150.     Cold Bore knew the FLSA required it to pay non-exempt employees, including Toomey and the other Day Rate Workers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

151.     Cold Bore knew Toomey and each Day Rate Worker worked more than 40 hours in at least one workweek during the relevant period.

152.     Cold Bore knew it paid Toomey and the other Day Rate Workers on a daily basis.

153.     Cold Bore knew it paid Toomey and the other the Day Rate Workers a day rate with no overtime for their hours worked over 40 in a workweek.

154.    Cold Bore knew it did not pay Toomey and the other Day Rate Workers on an hourly basis.

155.    Cold Bore knew it did not pay Toomey and the other Day Rate Workers on a "salary basis."

156.    Cold Bore knew it did not pay Toomey and the other Day Rate Workers any guaranteed salary that was not subject to reduction based on the number of days worked.

157.    Cold Bore knew that any "salary" Toomey and the other Day Rate Workers purportedly received was not "reasonably related" to their actual earnings.

158.    Thus, Cold Bore knew its day rate pay scheme did not satisfy the "salary basis" test.

159.    Cold Bore knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to Toomey and the other Day Rate Workers.

160.    Nonetheless, Cold Bore uniformly misclassified Toomey and the other Day Rate Workers as independent contractors and refused to pay them overtime.

161.    Cold Bore's decision to misclassify Toomey and the other Day Rate Workers as independent contractors exempt from overtime was neither reasonable, nor was it made in good faith.

162.    Likewise, Cold Bore's failure to pay Toomey and the other Day Rate Workers overtime was neither reasonable, nor was Cold Bore's decision not to pay these non-exempt employees overtime made in good faith.

163.    Cold Bore knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

164.    Cold Bore knowingly, willfully, and/or in reckless disregard carried out this illegal day rate pay scheme that systematically deprived Toomey and the other Day Rate Workers of overtime wages for their hours worked over 40 in a workweek in violation of the FLSA.

**COLD BORE'S FLSA VIOLATIONS WERE NOT DONE IN GOOD FAITH**

165.    Toomey incorporates all other paragraphs by reference.

166.    Cold Bore did not seek the advice of counsel regarding classifying its Day Rate Workers as independent contractors.

167.    Cold Bore did not receive advice from counsel regarding classifying its Day Rate Workers as independent contractors.

168.    Cold Bore did not rely on the advice of counsel in deciding to classify its Day Rate Workers as independent contractors.

169.    Cold Bore did not seek the advice of counsel regarding paying its Day Rate Workers a day rate with no overtime.

170.    Cold Bore did not receive advice from counsel regarding paying its Day Rate Workers a day rate with no overtime.

171.    Cold Bore did not rely on the advice of counsel in deciding to pay its Day Rate Workers a day rate with no overtime.

172.    Cold Bore did not investigate whether its day rate pay scheme satisfied the "salary basis" test.

173.    Cold Bore did not investigate whether its Day Rate Workers were independent contractors.

174.    Cold Bore's decision to misclassify its Day Rate Workers as independent contractors was neither reasonable nor made in good faith.

175.    Cold Bore's decision not to pay its Day Rate Workers overtime was neither reasonable nor made in good faith.

## <u>COUNT I</u>

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

176.    Toomey incorporates all other paragraphs by reference.

177.    Toomey brings his FLSA claims as a collective action on behalf of himself and the other Day Rate Workers.

178.    Cold Bore violated, and is violating, the FLSA by employing non-exempt employees (Toomey and the other Day Rate Workers) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they work in excess of 40 a workweek.

179.    Cold Bore's unlawful conduct harmed Toomey and the other Day Rate Workers by depriving them of the overtime wages they are owed.

180.    Accordingly, Cold Bore owes Toomey and the other Day Rate Workers the difference between the wages actually paid and the proper overtime wages earned.

181.    Because Cold Bore knew, or showed reckless disregard for whether, its day rate pay scheme violated the FLSA, Cold Bore owes Toomey and the other Day Rate Workers these wages for at least the past 3 years.

182.    Cold Bore is also liable to Toomey and the other Day Rate Workers for an amount equal to all their unpaid wages as liquidated damages.

183.    Finally, Toomey and the other Day Rate Workers are entitled to recover all reasonable attorney's fees and costs incurred in this action.

<u>**COUNT II**</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE NMMWA
(NEW MEXICO CLASS)**

184.    Toomey incorporates all other paragraphs by reference.

185.    Toomey brings his NMMWA claims as a class action on behalf of himself and the other New Mexico Class Members pursuant to FED. R. CIV. P. 23.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Toomey v. Cold Bore Technology Corp.*

186.   The conduct alleged in this Complaint violates the NMMWA. *See* N.M.S.A. § 50-4-20, *et seq.*

187.   At all relevant times, Cold Bore has been an "employer" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(B).

188.   At all relevant times, Cold Bore has been an "enterprise in business" within the meaning of the NMMWA.

189.   At all relevant times, Cold Bore employed Toomey and each New Mexico Class Member as covered "employees" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

190.   At all relevant times, Cold Bore has, and has had, employees (including Toomey and the other New Mexico Class Members) engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

191.   The NMMWA requires employers, like Cold Bore, to pay non-exempt employees, including Toomey and the other New Mexico Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in any one 7-day week. *See* N.M.S.A. § 50-4-22(D).

192.   Toomey and the other New Mexico Class Members are entitled to overtime pay under the NMMWA.

193.   Cold Bore violated, and is violating, the NMMWA by employing non-exempt employees (Toomey and the other New Mexico Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a 7-day week. *See* N.M.S.A. § 50-4-22(D).

194.    Cold Bore's improper practices at issue were, and are, part of a continuing course of conduct, entitling Toomey and the other New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

195.    Cold Bore's unlawful conduct harmed Toomey and the other New Mexico Class Members by depriving them of the premium overtime wages they are owed.

196.    Accordingly, Toomey and the other New Mexico Class Members are entitled to recover their unpaid overtime wages in amount equal to 1.5 times their regular rates of pay for their hours worked over 40 in a 7-day week; "an additional amount equal to twice the unpaid … wages" as treble damages, N.M.S.A. § 50-4-26(C); and all reasonable attorney's fees and costs incurred in this action, N.M.S.A. § 50-4-26(E).

## JURY DEMAND

197.    Toomey demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Toomey, individually and on behalf of the other Day Rate Workers, seeks the following relief:

        a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

        b.    An Order designating this lawsuit as a class action and certifying the New Mexico Class pursuant to FED. R. CIV. P. 23;

        c.    An Order designating Toomey and his counsel to represent the interests of the Day Rate Workers;

d.    An Order finding Cold Bore liable to Toomey and the other Day Rate Workers for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding Cold Bore liable to Toomey and the other Day Rate Workers for all unpaid overtime wages owed under the NMMWA, plus treble damages in an amount equal to two times their unpaid wages;

f.    A Judgment against Cold Bore awarding Toomey and the other Day Rate Workers all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

g.    A Judgment against Cold Bore awarding Toomey and the other Day Rate Workers all their unpaid overtime wages, treble damages, and any other penalties available under the NMMWA;

h.    An Order awarding attorneys' fees, costs, and expenses;

i.    Pre- and post-judgment interest at the highest applicable rates; and

j.    Such other and further relief as may be necessary and appropriate.

Date: August 26, 2024                                          Respectfully Submitted,

/s/ Esther C. Rodriguez
Esther C. Rodriguez (Bar No. 006473)
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400
Fax: (702) 320-8401
info@rodriguezlaw.com

Michael A. Josephson (To Apply *Pro Hac Vice*)
Andrew W. Dunlap (To Apply *Pro Hac Vice*)

-20-
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Toomey v. Cold Bore Technology Corp.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch (To Apply *Pro Hac Vice*)
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

*Counsel for Toomey and the Day Rate Workers*

-21-
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY
TRIAL
*Toomey v. Cold Bore Technology Corp.*

# EXHIBIT 1

Plaintiff's Consent to Action

<u>CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT</u>

Print Name: <u>Will Robert Toomey</u>

1.  I hereby consent to make a claim against <u>Cold Bore Technology</u> to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against <u>Cold Bore Technology</u>.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: <u>Will Toomey (Jul 12, 2024 09:34 CDT)</u>

Date Signed: <u>Jul 12, 2024</u>